KIMMEL & SILVERMAN, P.C
Jacob U. Ginsburg, Esq.
NJ Attorney ID: 039312011
30 East Butler Ave/
Ambler, PA 19002
Phone: (267) 468-5374
Email: jginsburg@creditlaw.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

**GABRIELLA LOMAS,** *individually and on behalf of all others similarly situated,*

Plaintiff,

v.

**APEX ASSET MANAGEMENT, LLC,**

Defendant.

Case No.

Class-Action Complaint and Demand for Jury Trial

## CLASS-ACTION COMPLAINT

**Gabriella Lomas** ("Lomas" or "Plaintiff"), by and through her attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Apex Asset Management, LLC** ("Apex" or "Defendant"):

## INTRODUCTION AND SUMMARY OF ACTION

1. Plaintiff's Class-Action Complaint is filed under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). In this action, Plaintiff seeks to represent herself and others similarly situated from the State of New Jersey. The Complaint alleges Apex violated the rights of Plaintiff and others similarly situated through the following acts and omissions:

- Apex sent debt collection letters to Plaintiff and putative class members which gave the false impression the letter was from an attorney or legal professional;

- Apex's collection letters threatened "extraordinary collection actions", which were by no means extraordinary, thereby creating a false sense of urgency to pay the alleged debt;

- Apex's collection letter threatened legal action Apex had no intention of truly pursuing;

- Apex placed collection calls and texts to Plaintiff, her spouse and to putative class members after receiving a written cease-and-desist letter; and

- Apex unlawfully threatened to report a medical debt to consumer reporting agencies, despite New Jersey's statutory prohibition on doing so.[1]

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the FDCPA claims in this action under 15 U.S.C. § 1692k(d), which states that FDCPA actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in the State of New Jersey and because the occurrences from which Plaintiff's cause of action arises took place and caused Plaintiff to suffer harm in the State of New Jersey.

4. Moreover, Defendant knowingly and purposefully availed itself to the State of New Jersey when it mailed collection letters to Plaintiff's New Jersey address.

5. Where the events and occurrences underlying this action occurred within this District, venue is proper under 28 U.S.C. § 1391(b)(2).

[1] *See, infra; See* N.J.S.A. 56:11-58.

## PARTIES

6. Plaintiff is a natural person residing in Magnolia, New Jersey, which is within Camden County.

7. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8. Defendant Apex is a corporation with principal place of business located at 2501 Oregon Pike, Ste 102, Lancaster, Pennsylvania 17601.

9. Defendant contacts persons who allegedly owe debts originally owed to another alleged creditor, via telephone, the U.S. Mail, and/or the Internet in an attempt to solicit or encourage those persons to remit monies.

10. Defendant is a "debt collector" as defined by the 15 U.S.C. § 1692a(6) of the FDCPA and a "medical debt collector" as defined by N.J.S.A. 56:11-57.

11. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## THE FAIR DEBT COLLECTION PRACTICES ACT

12. Congress enacted the FDCPA in 1977 after noting the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

13. At the time the FDCPA was being considered, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.*

14. A significant purpose of the FDCPA is not only to eliminate abusive practices by debt collectors, but "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.*

15. The FDCPA is a remedial statute, which is construed broadly so as to effect its purpose of protecting consumers. *See, Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).

## THE LOUISA CARMAN MEDICAL DEBT RELIEF ACT

16. For purposes of background, in July of 2024, New Jersey Governor Phil Murphy signed the Louisa Carman Medical Debt Relief Act, N.J.S.A. 56:11-56 *et seq*. ("Louisa Carman Act").[2]

17. The Louisa Carman Act provides *inter alia,* that: (1) any communication from a medical debt collector must include a statement in size 14 boldface font that the medical debt collector will not report the debt to any consumer reporting agency (N.J.S.A. § 56:11-59(c)); and (2) a medical debt collector shall not report a patient's medical debt to any consumer reporting agency for health care services performed on and after July 22, 2024. (N.J.S.A. § 56:11-58.)

## FACTUAL ALLEGATIONS

18. At all times relevant hereto, Lomas was alleged to owe a debt totaling $3,329.69 to Virtua Health System across five separate credit accounts, arising from medical services she received in 2024 and 2025 in connection with a pregnancy and the birth of her daughter.

19. On or about February 24, 2026, Apex sent Lomas a collection letter attempting to collect on that alleged medical debt. A copy of Defendant's initial collection letter is attached as Exhibit A.

20. That letter did not include a size 14 boldface font statement disclosing that the debt will not be reported to any consumer reporting agency. The letter also did not offer any reasonable

[2] There is no private right of action under the Louisa Carman Act. However, as set forth in greater length below, Apex threatened to take action it would legally prescribed from taking by the Louisa Carman Act, which thereby violated 15 U.S.C. § 1692(e)(2)(A) of the FDCPA. This complaint also alleges several violations of the FDCPA entirely independent of the Louisa Carman Act.

payment plan. Accordingly, the letter failed to comply with the requirements of the Louisa Carman Act.

21. Furthermore, Apex's letter stated: "Any account not paid may result in extraordinary collection actions against you, including referral to our attorney for the pursuit of a judgment." *See* Ex. A; *See also,* excerpt copied below:


Dear Gabriella Q Lomas,

This letter is to inform you that we have initiated the process to review your account for legal action.

We are giving you the courtesy of this opportunity to handle your account as a collection prior to the completion of our legal review process. Any account not paid may result in extraordinary collection actions against you, including referral to our attorney for the pursuit of a judgment. In addition to your balance noted above, you may be responsible for court costs, legal fees, and interest if your creditor secures a judgment against you.

Please contact our office as soon as possible to resolve this matter. We accept many forms of payment, including credit cards. You may also pay online at apexasset.com.

*Sincerely,*

Legal Collection Coordinator
1-717-358-1157

22. However, referring an account in collections to an attorney is not by any definition "extraordinary." That wording in the letter was knowingly and willfully deceptive, as it created a false sense of urgency in the consumer.

23. Moreover, the letter purported to be sent from the "Legal Collection Coordinator". However, upon information and belief, this letter was not from an attorney or legal professional, but a debt collector.

24. Furthermore, as of this date, no lawsuit has been filed by Apex. Upon information and belief, Apex did not truly intend to actually file suit, but to intimidate Lomas and putative class members into paying.

25. Upon information and belief, this letter was not uniquely tailored to Lomas, but was sent *en masse* to consumers in New Jersey.

26. On March 7, 2026, Lomas sent Apex a letter US Certified Mail, issuing a cease-and-desist for all telephone communications, and identifying each of the five collection accounts for which that cease-and-desist instruction would apply. Plaintiff's redacted letter dated March 7, 2026is attached as Exhibit B.

27. Specifically, Lomas's letter stated in no uncertain terms: "Direct all future communications regarding this matter to me in writing only, at the address listed above. **Do not contact me by telephone**." *See* Ex. B, p. 5 (emphasis added); *See also* excerpt below:

> **VII. COMMUNICATION PREFERENCES**
>
> Direct all future communications regarding this matter to me in writing only, at the address listed above. Do not contact me by telephone. Do not contact my spouse, employer, neighbors, or any third parties regarding this debt.
>
> This letter is sent solely for the purpose of protecting my legal rights under federal and New Jersey state law. It is not an acknowledgment that I owe any of these debts.
>
> Sincerely,



> **Gabriella Lomas**

28. USPS records reflect that the certified letter was delivered to Apex on March 12, 2026. *See* Exhibit C, USPS tracking delivery confirmation, which is also copied below:

**Tracking Number:**

**70210350000199536421**

**Copy** **Add to Informed Delivery (https://informeddelivery.usps.com/)**

**Latest Update**

Your item was picked up at the post office at 8:15 am on March 12, 2026 in LANCASTER, PA 17601.

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

**Delivered**

**Delivered, Individual Picked Up at Post Office**

LANCASTER, PA 17601

March 12, 2026, 8:15 am

29. Despite the clear cease and desist instruction in Lomas's letter and Apex's documented receipt of same, on March 25, 2026 at 9:08 am, Apex placed a collection call to Lomas from the number (888) 592-2144, seeking to collection the alleged medical debt.

30. Thereafter, on March 31, 2026, Apex placed another collection call from the number (888) 592-2144 seeking to collect that same alleged medical debt.

31. Apex also sent a series of collection text messages to Lomas's husband after it received Plaintiff's clear cease-and-desist instruction, which stated "do not contact my spouse."

32. Specifically, Apex sent collection text messages to Lomas's husband on March 19, March 23 and April 1, 2026, seeking to collect the medical debt at issue.

33. Once Defendant knew its calls and texts were unwanted, all further telephone communications were made for the purpose of harassing Plaintiff.

34. Furthermore, sometime in early April 2026, Lomas received yet another deceptive collection letter from Apex dated March 30, 2026. A true and correct copy of this collection letter is attached as Exhibit D and an image of the letter is copied below:



Toll free 888 592 2144

P.O. Box 5407
Lancaster, PA 17606-5407

2501 Oregon Pike
Suite 102
Lancaster, PA 17601-4890

apex
ASSET MANAGEMENT LLC

March 30, 2026

Gabriella Q Lomas
402 Gloucester Ave
Magnolia Nj 08049-1023

Balance: $3329.69
Re: Virtua Health System
Creditor #: 2105656685
Reference: 68751792

Dear Gabriella Q Lomas,

This letter is to inform you that we are considering forwarding this account to an attorney in your state for review. This is the last chance you will have to resolve this account as a collection and may result in extraordinary collection actions against you, including referral to our attorney for the pursuit of judgment. A judgment, paid or unpaid, may remain on your credit file for seven years from the date of the judgment.

In addition to your principal balance, 3329.69, you may be responsible for court costs, legal fees and interest if Virtua Health System secures a judgment against you.

Please call me as soon as possible to get this matter resolved. We accept many forms of payment, including credit cards. You may also pay online at apexasset.com

Sincerely,

Legal Collection Coordinator
1-717-358-1157

This is an attempt to collect a debt. Any information obtained will be used for that purpose.
This communication is from a debt collector.

35. In that collection letter, Apex once again threatened "extraordinary collections action against [Lomas], including referral to our attorney in the pursuit of judgment." *See, Id.*

36. In that letter, Apex did not disclose (in size 14 boldface font, or otherwise) that the debt would not be reported on Lomas's credit report. To the contrary, Apex threatened that a "judgment, paid or unpaid, may remain on [Lomas's] credit file for seven years from the date of the judgment." *See, Id.*

37. By threatening to report a medical debt incurred after July 22, 2024 on Lomas's credit report, Apex threatened to take action it legally could not take.

38. Lomas was upset, bothered and distressed by Apex's harassing, deceptive and abusive conduct.

39. The aforementioned actions were not solely directed at Lomas but numerous other similarly situated individuals.

40. Lomas seeks to vindicate her rights and the rights of all others similar

## CLASS ALLEGATIONS

41. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

42. Plaintiff seeks to represent the following classes:

> **Post Cease-and-Desist Collection (PCDC) Class:** All persons in the State of New Jersey who received one or more telephone calls or voicemails from Defendant in connection with an effort to collect a debt, after the person communicated to Defendant in writing that they no longer wished to be called in relation to the debt, from one year before the filing of the complaint until the date of class certification.
>
> **Collection Letter (CL) Class:** All persons in the State of New Jersey who received communications from Defendant which stated that accounts not paid may result "in extraordinary collection actions against you" and/or were signed by "Legal Collections Coordinator", from one year before the filing of the complaint until the date of class certification.
>
> **Unauthorized Collection Activity (UCA) Class:** All persons in the State of New Jersey who received communications from Defendant in connection with an effort to collect a debt alleged to originate from medical services incurred on or after July 22, 2024, where Defendant indicated the debt would appear on the person's credit report, from one year before the filing of the complaint until the date of class certification.

43. Excluded from the classes are any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

44. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

45. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

46. Plaintiff will fairly and adequately protect the interests of the Classes defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Neither the Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this class action lawsuit. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

47. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

48. Class Members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

49. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

- Whether Defendant has implemented systems in place to honor consumer cease-and-desist requests, to prevail on the *bona fide* error defense (all Classes);
- Whether calls and/or texts to consumers were placed in violation of a cease-and-desist request (PCDC Class);
- Whether Defendant's communications after a cease-and-desist request is "harassing" under 15 USC § 1692d (PCDC Class);

- Whether Defendant's communications after a written cease-and-desist request violates 15 USC § 1692c(c) (PCDC Class);
- Whether signing a letter from the "Legal Collection Coordinator" creates a false impression the letter is from an attorney or legal professional (CL Class);
- Whether the threat to take "extraordinary collection actions" could create a false sense of urgency about payment of the debt to an unsophisticated or susceptible consumer (CL Class);
- Whether Defendant's collection letters threatened to take legal action it did not truly intend to take (CL Class);
- Whether the statement that a medical debt incurred on or after July 22, 2024 may appear on the consumer credit report, was a threat to take action that legally could not be taken (UCA Class); and
- Whether disregarding the requirements set forth by the New Jersey Legislature when collecting medical debts is unfair or unconscionable (UCA Class).

50. Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct.

51. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

52. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

53. Based on information and belief, Defendant continues to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**COUNT I**
**COLLECTION CALLS AFTER WRITTEN CEASE-AND-DESIST**
**(15 U.S.C. §§ 1692c(c) and 1692d)**
*PCDC Class v. Apex*

54. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

55. Plaintiff brings this count on behalf of herself and all others similarly situated in the PCDC Class.

56. 15 U.S.C. § 1692c(c) provides in relevant part that if a consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt.

57. 15 U.S.C. § 1692d prohibits debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

58. Defendant violated 15 U.S.C. § 1692c(c) and 15 U.S.C. § 1692d when it placed collection calls and text messages to Plaintiff, Plaintiff's spouse and to putative class members after being instructed in writing not to call or text in connection with its debt collection activities.

**COUNT II**
**DECEPTIVE REPRESENTATIONS IN COLLECTION LETTER**
**(15 U.S.C. §§ 1692e(3), 1692e(5) and 1692e(10))**
*CL Class v. Apex*

59. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

60. Plaintiff brings this count on behalf of herself and all others similarly situated in the CL Class.

61. 15 U.S.C. § 1692e(3) prohibits the false representation or implication that any individual is an attorney or that any communication is from an attorney.

62. Defendant violated 15 U.S.C. § 1692e(3) when it signed the letter as being from the "Legal Collection Coordinator" despite not being a lawyer or legal professional.

63. 15 U.S.C. § 1692e(5) prohibits the threat to take any action that cannot legally be taken or that is not intended to be taken.

64. Defendant violated 15 U.S.C. § 1692e(5) when it threatened legal action it did not truly intend to take.

65. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

66. Defendant violated 15 U.S.C. § 1692e(10) for the reasons stated already in this Count, and also when it threatened "extraordinary collections actions", which were not in any way extraordinary.

## COUNT III
## UNLAWFUL CREDIT REPORT THREATS
## (15 U.S.C. §§ 1692e(5) and 1692f)
*Plaintiff and the UCA Class v. Apex*

67. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

68. Plaintiff brings this count on behalf of herself and all others similarly situated in the UCA Class.

69. 15 U.S.C. § 1692e(5) prohibits threats to take any action that cannot legally be taken.

70. Apex violated the rights of Plaintiff and the UCA Class by threatening to report medical debt to the credit reporting agencies where the debt was incurred on or after July 22, 2024, despite the New Jersey Legislature's strict prohibition from doing so.

71. 15 U.S.C. § 1692f prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt.

72. The New Jersey Legislature determined it was unfair or unconscionable for a medical debt collector to send out a collection letter without advising in size 14 boldfaced font that the debt would not be reported to a consumer reporting agency.

73. Defendant violated the rights of Plaintiff and the UCA Class by threatening to report a debt which it was legally prohibited from reporting, and by omitting the requisite advisory that the debt would not be reported to any consumer reporting agency.

//

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Gabriella Lomas, respectfully prays for judgment as follows:

a. Entry of an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the Class representative;

b. Entry of an order appointing Kimmel & Silverman, P.C. as class counsel;

c. Awarding all actual damages Plaintiff and the putative Classes suffered, as provided by 15 U.S.C. § 1692k(a)(1);

d. Awarding statutory damages of $1,000 for the violation of the FDCPA to Plaintiff and the putative Classes, as provided by 15 U.S.C. § 1692k(a)(2)(A);

e. All reasonable attorneys' fees, witness fees, court costs, class administration, and other litigation costs, as provided under 15 U.S.C. § 1692k(a)(3));

f. Injunctive relief prohibiting Defendant from engaging in the conduct described in this Complaint; and

g. Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Gabriella Lomas**, demands a jury trial in this case.

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

*/s/ Jacob U. Ginsburg*

Jacob U. Ginsburg, Esq.
NJ Attorney ID: 039312011
30 East Butler Ave.
Ambler, PA 19002
Phone: (267) 468-5374
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Dated: April 17, 2026